## Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc. (No. 2)

*John J. Brennan* and *Theodore Voorhees*, for plaintiff.

*Thomas M. Hyndman* and *Joseph DeLacy*, for receivers.

WATERS, J., April 29, 1957.—This proceeding is one of several arising out of the insolvency of Warren Lepley Ford, Inc., for which a receiver in equity has

been appointed. The Girard Trust Corn Exchange Bank has presented a petition for a rule to show cause why the receivers of Warren Lepley Ford, Inc., should not deliver and surrender to petitioner nine motor vehicles or the proceeds of their sale. The petition and answer set forth sufficient facts upon which to base a decision without taking testimony.

The receivers concede in their answer and new matter petitioner's right to two Ford automobiles, serial numbers B73G100311 and U5CC166457, or the proceeds of sale thereof. We therefore find that petitioner is entitled to the two Ford automobiles, serial numbers B73G100311 and U5CC166457, or the proceeds of sale thereof, claimed in paragraph 18 of the petition.

The issue raised concerning the remaining seven motor vehicles is whether the rights of petitioner to these vehicles are preferred as against the rights of the receivers in equity. This issue must be resolved in accordance with the provisions of the Uniform Commercial Code of April 6, 1953, P. L. 3, 12a PS §1-101 et seq., hereinafter referred to as the code, which was enacted to codify all existing laws on commercial transactions.

The rights of the parties depend on the nature of the transactions in regard to each vehicle or group of vehicles similarly handled. The seven vehicles may be classified into three groups.

1. A Ford motor truck, serial number F10V6N10214. The receivers admit that the partnership, Warren Lepley Ford, executed a motor vehicle installment sale contract (exhibit D of the petition) for the truck as both buyer and seller, that the contract was assigned by the partnership to petitioner and that the books and records of Warren Lepley Ford show a balance under the said agreement of $1,085.64. The receivers state in paragraph 20 of their new matter, that the truck was

used by Warren Lepley Ford, Inc., in its business as a parts truck, that a title certificate for the vehicle was issued by the Department of Revenue of the Commonwealth of Pennsylvania to Warren Lepley Ford, Inc., and that there was noted on the title certificate an encumbrance in the amount of $1,715.25 in favor of Girard Trust Corn Exchange Bank.

2. Four Ford motor vehicles, serial numbers M6CT-116773, U6CG119015, M6CT102492 and P6CG150356. The receivers admit that Warren Lepley Ford, Inc., executed motor vehicle installment sale contracts for these vehicles as both buyer and seller (exhibits E through N inclusive of the petition), that the contracts were assigned by it to petitioner and that the books and records of the corporation show balances due on the vehicles as follows:

| | |
|---|---|
| M6CT116773 | $2,697.71 |
| U6CG119015 | 1,820.70 |
| M6CT102492 | 2,101.72 |
| P6CG150356 | 2,577.84 |

These four vehicles were to have been used and were used as demonstrators.

3. Two Ford motor vehicles, serial numbers F10D6-E57761 and F50V6N35114. In the receivers' answer to paragraph 14 of the petition, they admit that the receivers took possession of the two vehicles, that pursuant to an agreement with petitioner the receivers have sold the vehicles and hold the receipts in lieu of the vehicles and that the books and records of Warren Lepley Ford, Inc., show the latter's indebtedness to petitioner in the amount of $1,467.88 and $2,083.23 for the two vehicles respectively. The answer of the receivers denies the remainder of the allegations of paragraph 14 of the petition, which averred that the two vehicles were covered by a wholesale credit plan (ex-

hibit A of the petition) entered into between Warren Lepley Ford, Inc., and petitioner. That a wholesale credit plan was entered into between the parties herein was averred in paragraph 1 of the petition and admitted by the receivers. Paragraph 22 of the receivers' new matter admits that these two vehicles were vehicles for which petitioner had paid the Ford Motor Company, which had been delivered to Warren Lepley Ford, Inc., and were being held by it for sale in the ordinary course of business. These admissions and averments are sufficient to justify the court in concluding that these two vehicles were intended by the parties at the time of their purchase to be covered by the wholesale credit plan. Whether the plan was adequate to cover the vehicles is a different issue and will be discussed hereinafter.

In regard to groups (1) and (2), the Ford truck and four Ford cars used as demonstrators, the motor vehicle installment sale contracts executed by Warren Lepley Ford, Inc., as both buyer and seller were a nullity or "wash sales". In every sale there must be a buyer and a seller; a person cannot sell property to himself. However, when Warren Lepley Ford, Inc., as the purported seller assigned these contracts to petitioner, it, in effect, gave title and a security interest in these five vehicles to petitioner until all the monthly installments were paid. See exhibits D through H of petition. Bearing in mind that these five vehicles were first financed by petitioner under its wholesale credit plan with Warren Lepley Ford, Inc., when petitioner accepted the assignments of the installment sale contracts, it in effect agreed to a novation whereby financing under the installment contract was substituted for financing under the wholesale credit plan. Petitioner thus became the holder of a security interest in the five vehicles: Code, sections 1-201(37),

9-102(1) (a). The status of the receivers is that of a lien creditor from the time of their appointment: Section 9-301 (3) of the code:

The rights of the parties to a security transaction are set forth in article 9 and are made dependent upon whether or not the security interest has been perfected. Section 9-302 requires the filing of a financing statement to perfect a security interest, with certain exceptions listed therein, one of which is applicable to the Ford truck.

Section 9-302 provides:

"(1) A financing statement must be filed to perfect all security interests except those covered in subsection (2) and the following: . . .

"(2) The filing provisions of this Article do not apply to the assignment of a perfected security interest, or to a security interest . . .

"(b) in property subject to a statute of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property.

"Compliance with any such statute is equivalent to filing under this Article."

These provisions indicate that if a statute requires that a lien or encumbrance be noted on a certificate of title, then filing of a financing statement is not required under section 9-302 to perfect a security interest.

The Vehicle Code of May 1, 1929, P. L. 905, sec. 203, 75 PS §33, as amended, provides:

"(a) A certificate of title shall contain such description and other evidence of identification of the motor vehicle, trailer, or semi-trailer for which it is issued as the secretary may deem necessary, together with a statement of any liens or encumbrances

which the applicant may show to be thereon, together with the name and addresses of the holder or holders of any such liens or encumbrances."

Section (b) provides, inter alia, that such notations of a lien or encumbrance on the certificate of title shall be adequate notice to creditors.

The receivers have averred that the corporation obtained a title certificate for the Ford truck from the Department of Revenue of the Commonwealth of Pennsylvania made to Warren Lepley Ford, Inc., and that there was noted on this title certificate an encumbrance in the amount of $1,715.25 in favor of Girard Trust Corn Exchange Bank.

We hold that this notation on the certificate of title of the encumbrance of petitioner was equivalent to the filing requirement under section 9-302 of the code, that petitioner had a perfected security interest in the Ford truck and that under section 9-201 and section 9-303 and the official comment thereunder the security agreement was effective against the receivers. Petitioner therefore is entitled to the Ford truck, serial number F10V6N10214, or the proceeds of the sale thereof, in accordance with section 9-306.

In regard to group (2), the four Ford cars used as demonstrators, no financing statement was filed setting forth petitioner's security interest under the motor vehicle installment sale contracts. Petitioner claims this was not necessary since the vehicles were covered by the financing statement filed under the wholesale credit plan. We do not agree. The financing statement referred to describes the property covered (exhibit C) :

"This financing statement covers the following types (or items) of property: (list) motor vehicles, tractors, trainers and their equipment, appurtenances, appliances, accessories and replacement parts, financed

by Girard Trust Corn Exchange Bank under its Wholesale Credit Plan."

When petitioner agreed to finance the automobiles under the installment plan contract rather than the wholesale credit plan contract because the latter plan did not permit automobiles financed under it to be used as demonstrators, it lost its perfected security interest. The financing statement did not cover automobiles not financed under the wholesale credit plan. Petitioner therefore held an unperfected security interest in these four vehicles and under section 9-301 (*c*) of the code its rights are subordinate to those of the receivers.

In respect to group (3), the two motor vehicles, serial numbers F10D6E57761 and F50V6N35114, in which petitioner claims a security interest under the wholesale credit plan contract, the receivers argue that no security interest was created in petitioner because:

"(1) The Security Agreement (Wholesale Credit Plan) does not contain an adequate description of the collateral; and

"(2) The Petitioner, by failing to enforce the provisions of its Wholesale Credit Plan, was guilty of constructive fraud upon the other creditors, thereby voiding its Security Agreement."

The code in section 9-203 sets forth the formal requisites of an enforceable security interest.

"(1) A security interest is not enforceable against the debtor or third parties unless

"(a) the collateral is in the possession of the secured party; or

"(b) the debtor has signed a security agreement which contains a description of the collateral. . . ."

The Uniform Commercial Code Comment, 12A PS page 375, states:

"The only requirements in cases not involving land are (a) a writing; (b) the debtor's signature; and (c) a description of the collateral or kinds of collateral."

Section 9-204(1) of the code states:

"(1) A security interest cannot attach until an agreement is made that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching."

These sections make it clear that in order that there be a valid and enforceable security agreement the following conditions must be met: (1) A written agreement signed by the debtor granting a security interest in collateral; (2) a description of the collateral; (3) value given by the secured party; and (4) debtor's rights in the collateral.

The receivers argue that the security agreement (wholesale credit application) entered into between Warren Lepley Ford, Inc., and petitioner lacked a proper description of the collateral. There is no contention that any other element was missing. An examination of the wholesale credit plan reveals that the description was of a general nature. It provided:

"We, a dealer in passenger and commercial automobiles (herein called merchandise), desire that your Wholesale Credit Plan be made available to us for the financing of merchandise. The benefits of the Plan shall apply where you are notified of the shipment or delivery to us by the manufacturer or distributor of such merchandise or where monies are advanced by you to or for our account in connection with our acquisition of such merchandise."

Passenger and commercial automobiles financed by Girard Trust Corn Exchange Bank is the description

which the receivers contend is not sufficient. Section 9-110 of the code provides:

"For the purposes of this Article any description is sufficient whether or not it is specific if it reasonably identifies the thing described."

Considering the nature of the agreement, the nature of the business of the two parties and the business practices of automobile dealers and their financing agents, we think the description is sufficient. The code has removed the necessity of listing by serial number property used as collateral in a security agreement. Under the business practice of automobile dealer financing, a specific description of each vehicle as it was financed would be an unrealistic and unreasonable requirement. The only description feasible is a general description. The official comment to section 9-110 of the code, 12 A. PS page 361:

"The requirement of description of collateral (see Section 9-203 and comment thereto) is evidentiary. The test of sufficiency of a description laid down by this Section is that the description do the job assigned to it—that it make possible the identification of the thing described. Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test."

This description does the job assigned to it; it makes possible the identification of the property or merchandise intended to be covered by the agreement.

The receivers state in their brief that the requirement of description of collateral in the financing statement is not as strict as the requirement of description in the security agreement and admit that the financing statement must contain only a statement indicating the types of property covered: Code, section

9-402(1). An examination of the financing statement (exhibit C of petition) shows that it meets this requirement.

We do not agree with the receivers' contention that petitioner was guilty of a constructive fraud upon other creditors, thereby avoiding its security agreement, by failing to enforce the provisions of the agreement requiring payments within a specified time.

As petitioner argues in its responsive brief, this is a novel conception without authority. The argument that it was a fraud against other creditors has no foundation. Other creditors were put on notice by the financing statement and under section 9-208 of the code could have obtained from petitioner a detailed statement of amounts due.

Petitioner, having a perfected security interest in the two vehicles, serial numbers F10D6E57761 and F50V6N35114, is preferred over the receivers under section 9-201 and section 9-303 and the official comment thereto, and is entitled to possession of the automobiles or the proceeds from the sale thereof under section 9-306.

For the reasons given above, we enter the following

### Order

And now, to wit, April 29, 1957, the petition for rule to show cause why the receivers of Warren Lepley Ford, Inc., should not surrender certain motor vehicles, or the receipts of sale thereof to petitioner, is granted and the rule made absolute as to motor vehicles serial numbers F10V6N10214, F10D6E57761, F50V6N-35114, B73G100311 and U5CC166457, to the extent of the unpaid balances due petitioner. The petition is dismissed and the rule discharged as to motor vehicles serial numbers M6CT116773, U6CG119015, M6CT102492 and P6CG150356.